The applicant is ordered discharged from custody.

---

### BAKER v. STATE.

(Court of Criminal Appeals of Texas. Feb. 8, 1911.)

WEAPONS (§ 17*)—UNLAWFULLY CARRYING—INSTRUCTIONS.

It was error to refuse to instruct that accused did not unlawfully carry a weapon, if he took it during an encounter between others, and retained it only to prevent a shooting.

[Ed. Note.—For other cases, see Weapons, Dec. Dig. § 17.*]

Appeal from District Court, Kerr County; R. H. Burney, Judge.

Will Baker was convicted of unlawfully carrying a pistol, and he appeals. Reversed and remanded.

Lee Wallace and Ben H. Kelly, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

PRENDERGAST, J. The defendant was indicted, under article 338 of the Penal Code of 1895, as amended by Acts 1905, p. 56, for unlawfully carrying a pistol on or about his person. He was not indicted, under article 340 of the Penal Code, for going into an assembly and having or carrying about his person a pistol.

The evidence shows that there was a dance at the residence of J. S. Hope, in Kerr county, some time in March or April, 1910; that the defendant, who lived about a mile or mile and a half from Hope's, took his family to the dance in a hack; that there was considerable drinking, and some of the attendants were drunk, at the dance; that during the night a fight occurred between Will Hope, who lived at his father's, where the dance was, and Will Morgan, in the yard; that during the fight a pistol was fired two or three times; that the defendant ran out of the house to where Will Hope and Morgan were fighting, and saw a pistol on the ground, which they were trying to get; that he ran up and secured the pistol, took it in the house in his hand, and offered it to another party, Charles Crider, but Crider declined to take it. It seems that either a short time before this, or a short time afterwards, whether before or afterwards was controverted, Crider had had trouble with Morgan. The evidence further discloses that the defendant did not leave the pistol, or offer to leave it, with any of the Hope family, but carried it out from the house to where his hack was. Either then, or very soon afterwards, he hitched up his team, put his family and a companion in, and, hearing Will Morgan coming out, told his companion to drive on down towards him, he walking on ahead with the pistol still in his hand; that his hack soon caught up with him, and he got in and drove directly to his home, carrying the pistol with him; that the next morning he got on his horse and carried the pistol back to the Hopes, and delivered it to Will Hope, the owner. He also testified that, in taking the pistol in the house and offering it to Crider, he wanted to keep Will Morgan from getting it; that he was afraid he would take it away from him, as he knew he had it; that he carried the pistol home with him to prevent trouble, and with no other purpose, and had no intention to violate the law by carrying it as he did. Several witnesses testified that they saw him taking the pistol in his hand from where the fight occurred into the house and offering it to Crider, and from there taking it out to his hack.

The court gave a general charge to the jury to the effect that if they believed from the evidence beyond a reasonable doubt that the defendant, at about the time charged in the indictment, did carry on or about his person a pistol, then to find him guilty, etc. The defendant requested the following charge: "If the jury believe the pistol charged to have been carried by defendant was the property of Will Hope, and that defend-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

ant took the same from the said Hope during the fight or personal encounter between said Hope and one Will Morgan on the night in question at the home of said Hope, and did so for the purpose of preventing any person from getting shot or hurt with said pistol, and that for said purpose alone, and with no intent on defendant's part to violate the law, defendant took the pistol off the premises, and returned it to said Hope next day, they must acquit the defendant." The court refused to give this charge.

The appellant properly assigns this as error. The Assistant Attorney General has confessed that this was an error, and he joins the appellant in asking that the case be reversed and remanded. It is our opinion that it was error in the court below to refuse to give this charge, or some such apt charge as would present this question to the jury for their determination. Schroeder v. State, 50 Tex. Cr. R. 111, 99 S. W. 1003; West v. State, 21 Tex. App. 427, 2 S. W. 810; Mangum v. State, 15 Tex. App. 362.

Other errors are assigned. We deem it unnecessary to consider them. They will doubtless not occur upon another trial. We doubt if any of them, however, show reversible error.

For the error above pointed out, the case is reversed and remanded.